IN THE FEDERAL DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE

FILED
FEB 19 2021 DB
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

**MICHAEL TANGREDI BOILEAU,**
and **KYLE BOILEAU,**

v.

**BERKSHIRE HATHAWAY, INC.,**
**AMERICAN EXPRESS, INC.,**
**WARREN BUFFETT,**
**CHARLES MUNGER,**
**MARC HAMBURG,**
**AJIT JAIN,**
**GREGORY ABEL,**
**THOMAS MURPHY,**
**KENNETH CHENAULT,**
**STEVE BURKE,**
**SUSAN DECKER,**
**MERYL WITMER,**
**WALTER SCOTT,**
**RONALD OLSON,**
**CHARLOTTE GUYMAN,**
**HOWARD BUFFETT,**
**PETER CHERNIN,**
**VINCENT BAMBINELLI,**
**JOSEPH H. WHITE,**
**LAURA K. LIGHTFOOT,**
**DENNIS FELTNER,**
**MERYL MCCARGAR,**
**JAMES ALVAREZ,**
**SARAH O'CONNELL,**
**TIFFANY L. MYERS,**
**SOFIA BAMBINELLI,**
**GINA BAMBINELLI,**
**RICHARD FERRIGNO,**
**MELISSA FERRIGNO,**
**VANESSA FERRIGNO,**
and **"JOHN / JANE DOES 1-50"**

Case No.:_____

Filed:_____ 03-21 0139

Jury Demand

**COME NOW THE PLAINTIFFS,** Michael Tangredi Boileau and Kyle Joseph Boileau, collectively stated hereafter as the "Plaintiffs", to bring the following Complaint, as well as each of its components and allegations, before the honorable Court against the aforementioned individuals, collectively stated hereafter as the "Defendants" unless otherwise specifically noted:

1. **DEFINITION.** The following terms are hereby defined as they are relevant to the Complaint and the allegations contained herein:
    1. The **"Events"** shall refer to the sequence and series of occurrences which took place between in or around March of 2017, or prior to that if it becomes apparent, and, as of the filing of this Complaint, the Events are considered by the Plaintiffs to be ongoing.
    2. The **"Technology"** shall refer to the application, coded data, script, function or collection of functions, formulas, algorithms, and/or other relevant portions of data which when compiled are capable of telepathic output transmission, whether or not proprietary. This Technology is also capable to access other various sets of data from a person's brain via the use of emitted brainwaves via electromagnetic dissemination, based on a person's unique electromagnetic frequency signature.
    3. **"Telepathy"** shall refer to a channel of communication which is opened between two or more individuals using solely the involved individual's brain, and emitted brainwaves via electromagnetic dissemination, and therefore not requiring the use of vocal chords, writing of any signs, characters, or symbols, or the transcription of thoughts, ideas, or statements via other technology, such as word processing, e-mail, text message, or other type of communication.
    4. As it is spoken of throughout the audio footage recorded by the Plaintiff Michael Boileau, **"Backscatting"** shall refer to the telepathic communication channel, herein clearly stated and alleged as being unauthorized, and all communications broadcast thereon for the purpose of harassment and torment, which is inclusive of, but not limited to, psychological, emotional, and sexual. This term is used throughout the audio evidence to be submitted shortly following the filing of this Complaint.
    5. The **"Carrier"** shall refer to the frequency upon which the above-defined Backscatting was transmitted to the public via a sub-audible, or nearly sub-audible volume. To the knowledge of the Plaintiffs, this was done without prior authorization from the Federal Communications Commission, or by any other agency authorized to allocate a radio frequency band for the purpose of publicly consumable radio.
    6. The **"Content"** shall refer to the subject matter, any portrayals, and purported scenario and situation related thereto which was broadcast during a segment of time where Backscatting occurred between one or more of the Defendants and one or more of the Plaintiff.
    7. **"Neurological Mining"** shall refer to the unauthorized collection, obtaining, maintaining, recording, logging, or any other manner which is used to collect or obtain data, including but not limited to ideas, concepts, images, sounds,

memories, statistics or other data related to bodily functions, or any other information which may only be obtained via the access to a persons neurological functions via the receipt of electroencephalographic information or any other manner in which an individual receives such data using a person's neurological functions. Neurological Mining, as defined herein, can take place in four forms: "Thought-Fracking", "Video Eavesdropping", "Otolarynological Eavesdropping", "Memory Poaching", and "Dream Surfing."

8. **"Thought-Fracking"** shall refer to the unauthorized obtaining, recording, copying, storing, analyzing, encoding, decoding, or any other viewing or processing of data from a vicim's thought processes, internal monologue, or other neurological or subliminal process.

9. **"Video Eavesdropping"** shall refer to the unauthorized obtaining, maintaining, monitoring, listening, encoding, decoding, and/or recording of audible sounds or voices from a victim's own eyes via Neurological Mining.

10. **"Otolarynological Eavesdropping"** shall refer to the unauthorized obtaining, maintaining, monitoring, listening, encoding, decoding, and/or recording of audible sounds or voices from a victim's own ears via Neurological Mining.

11. **"Memory Poaching"** shall refer to the unauthorized obtaining, recording, copying, storing, analyzing, encoding, decoding, or any other viewing or processing of data, including but not limited to audio, video, and/or other data associated therewith, from a vicim's memories or recollection utilizing the aforementioned Technology.

12. **"Dream Surfing"** shall refer to the unauthorized viewing, collecting, storing, duplicating, modifying, and/or interacting with in any manner, whether invasive or not, a victim's dreams, sleep patterns, electroencephalographic activity, or other brain or neurological activity while a victim is asleep and is unaware, having not authorized, access to such information.

13. **"Maliciously Obtained Information"** shall refer to any data downloaded, uploaded, obtained, copied, recorded, encoded, decoded, or which was otherwise accessible as a result of Neurological Mining, as defined above, which includes login items such as usernames, passwords, or keys, as well as personally identifying information, of the Plaintiff, or, via Video Eavesdropping, of the other individuals who at any time had authorized their personally identifying information to be in the possession of the Plaintiff. This also includes any ideas, thoughts, plans, and/or conceptualizations which a person conceives utilizing their own neurological function that could or would be subject to an eventual copyright or other protection as intellectual or intangible property.

14. **"Purported Scenario"** shall refer to an event broadcast via radio frequency intended to cause either or both of the Plaintiffs to undergo substantial emotional distress, to change their previously intended or planned course of action in their lives, or to otherwise deceive, fool, trick, mislead, control, or manipulate the Plaintiffs for personal gain or to further the Defendants' plans, either individually or collectively. Each Purported Scenario is a violation of

USC 18 § 1343, USC 18 § 1038, USC 18 § 2261A, as well as other statutes as defined specifically hereunder.

2. **PARTIES.** The parties to this Complaint are as follows:
   1. Plaintiff **Michael Tangredi Boileau** is a United States citizen and may be notified of any information regarding the above-styled case via United States Mail at 107 Alhambra Circle, Nashville, Tennessee 37207.
   2. Plaintiff **Kyle Joseph Boileau** is a United States citizen and may be notified of any information regarding the above-styled case via United States Mail at 107 Alhambra Circle, Nashville, Tennessee 37207.
   3. Defendant **Berkshire Hathaway, Inc.** is a corporate entity, traded publicly under NYSE symbols "BRK.A" and "BRK.B", which is headquartered at 3555 Farnam Street, Omaha, NE 68131. Throughout the aforementioned Events, each of the Defendants 5-30 at various times represented themselves to be representing Defendant Berkshire Hathaway in various, respective capacities, as well as having each acted in their own personal capacities while perpetrating the claims herein against the Plaintiffs.
   4. Defendant **American Express, Inc.** is a corporate entity, traded publicly under stock exchange symbol "AXP", which is headquartered at 200 Vesey Street, Lower Manhattan, New York, NY 10285.
   5. Defendant **Warren Buffet** is, based on information and belief, a United States citizen who is the chairman and chief executive officer of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.
   6. Defendant **Charles Munger** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.
   7. Defendant **Marc Hamburg** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.
   8. Defendant **Ajit Jain** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.
   9. Defendant **Gregory Abel** is, based on information and belief, a United States citizen who an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.
   10. Defendant **Thomas Murphy** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

11. Defendant **Kenneth Chenault** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

12. Defendant **Steve Burke** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

13. Defendant **Susan Decker** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

14. Defendant **Meryl Witman** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

15. Defendant **Walter Scott** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

16. Defendant **Ronald Olson** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

17. Defendant **Charlotte Guyman** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

18. Defendant **Howard Buffett** is, based on information and belief, a United States citizen who is an executive board member of Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

19. Defendant **Peter Chernin** is, based on information and belief, a United States citizen who is employed by Defendant American Express, and is believed to be currently receiving correspondence via the legal department of Defendant American Express.

20. Defendant **Vincent Bambinelli** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and/or Defendant Buffet in the capacity of financial advisor and/or consultant, and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

21. Defendant **Joseph Houston White** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

22. Defendant **Laura Kate Lightfoot** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway. Defendant Lightfoot also claims to be representing Defendant American Express in her efforts put forth against the Plaintiffs throughout the furtherance of the commission of the allegations contained herein and in accompanying evidence hereto.

23. Defendant **Dennis Feltner** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

24. Defendant **James Alvarez** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

25. Defendant **Sarah O'Connell** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

26. Defendant **Tiffany Larkin Myers** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

27. Defendant **Gina Bambinelli** is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

28. Defendant **Sofia Bambinelli**, is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

29. Defendant **Richard Ferrigno**, is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

30. Defendant **Melissa Ferrigno**, is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

31. Defendant **Vanessa Ferrigno**, is, based on information and belief, a United States citizen who is employed by Defendant Berkshire Hathaway and is believed to be currently receiving correspondence via the legal department of Defendant Berkshire Hathaway.

32. Defendants **"John / Jane Does 1 - 50"** are currently unknown to the Plaintiffs, however have been listed due to the fact that not all participants to the conspiracy alleged herein have been revealed to the Plaintiffs.

3. **JURISDICTION and VENUE.** The jurisdiction and venue under which the Plaintiffs seek relief for the claims and allegations made hereunder federal law in the Federal Civil Court for the Middle District of Tennessee.

4. **STATEMENTS of FACT.** The Plaintiffs collectively, unless stated otherwise, hereby allege the following acts to have been committed by the Defendants, either individually or collectively:
   1. Plaintiffs Michael and Kyle Boileau are a couple married in Rutherford County, Tennessee upon issuance of a marriage certificate on May 1, 2017.
   2. In or around mid-2016, the Plaintiff Michael Boileau copyrighted a fictional manuscript for a novel based on true events titled "Scatterbrain." Subsequently, Plaintiff Michael Boileau published the novel online via the virtual literary marketplace hosted on "amazon.com." The novel was available for sale for a very brief period of time prior to its removal by the Plaintiff in order to make a few slight edits to its content, and during this time period, only a single copy was sold. Due to the content of this novel, specifically the portion of it which is entirely untrue and was added as a dramatic embellishment, the Events ensued; however, it is the Defendants listed hereunder who, based on currently known information, are at fault and in reckless violation of federal law whereby the Plaintiffs are the victims.
   3. Since as early as March 2017, the Events have been broadcast at a sub-audible volume via an unknown Carrier by the Defendants, or by some third party unmentioned herein.
   4. Based on a conversation which was recorded as on or around March 7th, 2017, Defendant Berkshire Hathaway received a contract, or was stated by Defendant O'Connell to Defendant Myers to have received a contract, with the United States government to keep under surveillance, investigate, and/or observe, "the individual known as "Scatterbrain."
   5. The "total value" of the above-described contract, as stated by Defendant O'Connell is one trillion US dollars ($1,000,000,000,000.00). This is quoted from audio recorded via sub-audible interference on a video recorded by the Plaintiff Michael Boileau for work-related purposes as the property manager for a Motel 6 franchisee.
   6. At the time of the discussion referenced above, the Plaintiff was unaware of this this discussion between these two defendants, however the manner in which the Events have been broadcast provide for it to have been inadvertently captured by the Plaintiff and for it to be used to prove these allegations.
   7. Plaintiff Michael Boileau has collected roughly four terabytes of audio footage in ".wav" format in order to prove the allegations contained herein. These recordings were obtained by merely using the microphone which is installed on the Plaintiff's computers, cell phones, and other recording devices, and without the use of any antenna, specific software or firmware, or any other means by which the Carrier itself was received. The

page 7 of 12

Case 3:21-cv-00139   Document 1   Filed 02/19/21   Page 7 of 12 PageID #: 7

conversations which the Plaintiff managed to capture are simply ambient noise which anyone can capture.

8. Based on a series of conversations recorded by the Plaintiffs on February 2nd, 2020, Plaintiff Kyle Boileau and his ex-girlfriend, Sam Schaapveld, were approached by individuals working with Defendant Vincent Bambinelli, who were instructed by him to impersonate agents of the United States Secret Service, in furtherance of the Defendants' attempts to hide the scheme which they engaged in perpetrating against the Plaintiffs.

9. On or around February 9th, 2020, the Defendants began to force communication with Plaintiff Michael Boileau. This communication channel is, at the time of filing this Complaint, still open against the will of the Plaintiffs.

10. Following the aforementioned initial contact and continuing through the filing of this Complaint, a series of Scenarios, as defined above, broadly ranging in content and perpetrated by the Defendants, either individually or collectively, was broadcast via the Carrier. Each one of these scenarios constitutes a violation of United States Code 18 § 1038, as it is considered a hoax intended to spread false information or belief. Each scenario also furthers the Defendants' violation of United States Code 18 § 2261a, due to the Defendants' unauthorized electronic surveillance of the Plaintiff, as well as their harassment and obvious attempt to inflict emotional and/or psychological harm, distress, or damage and attempt to force a commission of suicide in order to cover up the Events as they transpired due to their severe culpability and the extent to which the Plaintiff is able to prove such.

11. In violation of United States Code 18 § 1343, the Defendants', each time that false information was broadcast with the intent of either Plaintiff acting on such information, perpetrated fraud by radio.

12. In violation of United States Code 18 § 249, the Defendants are also alleged as having committed a series of hate crimes, due to the language used to describe the Plaintiffs throughout their illegal surveillance.

13. The Plaintiffs believe that due to the capability of the Technology to view memories utilizing electromagnetic signatures for a persons neurological functions, the Defendants have committed a series of violations of United States Code 18 § 2252, as any memories from a person which derived from a period of time prior to their eighteenth birthday, which are depicted as decoded or decrypted data yielding images or video, do in fact contain portions of data which fall under the definitions under United States Code 18 § 2256.

14. Plaintiff Michael Boileau was harassed via the methods described herein regarding varying criminal allegations, to the extent that the Defendants' broadcast was purporting to be a "trial via radio frequency", or some other mechanism to attempt to coerce or bully the Plaintiff into believing that the Defendants' were acting under the government's request or instruction to do so. Obviously untrue, the Plaintiff responded that law enforcement would have to officially make such accusations or allegations for them to be considered or perceived to be anything but a furtherance of the harassing

element of the Events. However, to date, not a single allegation has been made in any conventional manner.

15. In or around March of 2020, Plaintiff Michael Boileau placed a report with Nashville Metro Police regarding the Events which had transpired up until that point. At the time, the impression he was under was that his residence was set up by one or more of the defendants with speakers, microphones, and/or video surveillance in order to harass him. The Plaintiff was, at the time, unaware of the Technology and its capabilities.

16. In or around April of 2020, Plaintiff Michael Boileau placed a report with Nashville Metro Police regarding the Events which had transpired up until that point and the impression he was under, considering that the purveyance of false information, hoaxes, and attempts to deceive and defraud via the Carrier.

17. Plaintiffs Michael Boileau and Kyle Boileau were unnecessarily separated and deprived of communication with each other since June of 2020. The two Plaintiffs are still being kept from communication as a result of the Events surrounding the circumstances described herein.

18. On or around September 15th, 2020, Plaintiff sent via regular mail to various Defendants, a letter stating the possibility of an unauthorized form claiming or purporting to be a valid or properly executed power of attorney for the Plaintiff Michael Boileau.

19. During summer of 2020, Plaintiff filed an identity theft report with the official site "idtheft.gov" to report either unauthorized or improperly disclosed use of his personally identifiable information in order to apply for accounts under his name since the beginning of the year 2020.

20. On August 17th, 2020, Plaintiff Michael Boileau placed a phone call to Nashville's field office for the Federal Bureau of Investigation and made a statement regarding the previously stated use of his personal identity, as well as the illegal and unauthorized surveillance and contact being forced upon him. Following that phone call, on August 24th, 2020, Plaintiff Michael Boileau placed a report with Nashville Metro Police to make similar statements regarding the impression he was under at that time based on the data being broadcast by the Defendants' at the time.

21. In early September of 2020, Plaintiff Michael Boileau provided in person a copy of a settlement offer and an accompanying memorandum to his mother, Maria Tangredi, as he was under the impression at the time that Defendant Vincent Bambinelli, who is an uncle to both the Plaintiff and his mother, was in contact with her directly and in depth regarding the resolution of the matters described herein. This offer for settlement and release had an expiration date ten (10) days from its issuance. This document was signed for to verify its receipt. Subsequently, no response was received by any party listed thereon with regard to its offer to settle these matters. It is believed by the Plaintiffs that Mrs. Tangredi is being bound under some form of blackmail by Defendant Vincent Bambinelli,

22. Plaintiff Michael Boileau believes that, based on what he has heard broadcasted, that the Defendants, in an attempt to sabotage his life further

and frustrate his efforts in resolving the issues at hand, purchased or otherwise acquired possession of the real property located at 1412 Brick Chuch Pike, Nashville, Tennessee 37207, or the building situated thereon. Subsequently, the Plaintiff was required to relocate his belongings, as he resided on the property, and his employment was terminated. Shortly after New Year's Day 2021, the Plaintiff vacated the property.

23. On January 30th, 2021, Plaintiff sent, via certified mail, letters to Defendant Berkshire Hathaway, Defendant Vincent Bambinelli, exclaiming clearly that there are no current forms, documents, or files which claim or purport to be, assign, or offer valid power of attorney for either Plaintiff.

24. In the beginning of February of 2021, Plaintiff sent via regular mail a letter to the legal department of Berkshire Hathaway, as well as its chairman Defendant Buffet, describing as vividly as possible his general sentiment via the language therein. Attached therewith were two SD cards containing a sample of the audio evidence which has been collected to illustrate the extent to which the company is culpable and implicated regarding the Events.

25. On February 10th, 2021, Plaintiff Michael Boileau placed a phone call to Nashville's field office for the Federal Bureau of Investigation and made a brief statement regarding the Events. The Plaintiff was instructed to mail in a summary of what was taking place, as well as the recordings which were obtained by the Plaintiff as stated above.

26. On February 14th, 2021, Plaintiff Michael Boileau sent via United States Postal Service a brief statement, which can be found as an exhibit hereto, to Nashville's field office for the Federal Bureau of Investigation, as well as a portion of the audio recordings referenced herein.

**THE PLAINTIFFS**, having asserted the foregoing claims and allegations, each individually and collectively, hereby request the following as relief for the claims set forth in violation of 18 USC § 2261a, 18 USC § 1038, 18 USC § 1343, 18 USC § 912, 18 USC § 249, as well as other violations which were willfully and knowingly committed by the Defendants, individually or collectively:

1. In the form of injunctive relief, whereby each Defendant is ordered to discontinue the illegal surveillance of the Plaintiffs and unauthorized use of their personal data to further their illicit research and medical experiments, whether or not such research and/or experiments are invasive.

2. In an amount of damages, including but not limited to punitive damages and compensatory damages, which the honorable Court deems fair and appropriate in consideration of the evidence presented in connection with this Complaint and the allegations contained herein.

3. In an amount of treble damages which the honorable Court deems fair and appropriate in consideration of the evidence presented in connection with this Complaint and the allegations contained herein, taking also into account the aforementioned request for damages, including but not limited to compensatory and punitive damages.

4. In any other manner, compensatory or otherwise, which the Court may deem necessary, fair or appropriately ordered, after taking into consideration the far-flung

and unusual nature of the offenses committed by the Defendants, both collectively or individually, against the Plaintiffs, as well as the degree to which it is apparent of the Defendants' blatant, reckless disregard for the laws of the United States, for the respect, rights and privileges due to the Plaintiffs as citizens, and of course, their lack of consideration for the concept of human decency.

**WHEREFORE** the Plaintiffs assert the foregoing Complaint and its allegations, both individually and collectively, the Plaintiffs request the Judgement of the Honorable Court in favor of the relief requested herein as compensation for such claims.

_____   Date: 2/17/2021
MICHAEL BOILEAU,
Pro se


_____   Date: 2/17/2021
~~MICHAEL BOILEAU~~
KYLE BOILEAU,
Pro se

## CERTIFICATE OF SERVICE

I, Michael Boileau, hereby serve a true and correct copy of the foregoing document upon the Defendants each at their respective addresses as listed below:

[ x ]  Berkshire Hathaway Incorporated c/o Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  American Express Incorporated, 200 Vesey Street, Lower Manhattan, New York, NY 10285;
[ x ]  Warren Buffett c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Charles Munger c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Marc Hamburg c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Ajit Jain c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Gregory Abel c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Thomas Murphy c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Kenneth Chenault c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Steve Burke c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Susan Decker c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Meryl Witmer c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Walter Scott c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Ronald Olson c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Charlotte Guyman c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Howard Buffett c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Peter Chernin c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Vincent Bambinelli c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Joseph White c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Laura Lightfoot c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Dennis Feltner c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  James Alvarez c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Sarah O'Connell c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Tiffany Myers c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Sofia Bambinelli c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Gina Bambinelli c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Richard Ferrigno c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Melissa Ferrigno c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;
[ x ]  Vanessa Ferrigno c/o Berkshire Hathaway Legal Dept, 3555 Farnam St, Omaha, NE 68131;

_____  Date: 2/17/2021
MICHAEL BOILEAU,
Pro se