# IN THE FEDERAL DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE

MICHAEL TANGREDI BOILEAU,
and KYLE BOILEAU,

v.

BERKSHIRE HATHAWAY, INC.,
AMERICAN EXPRESS, INC.,
BANK OF AMERICA, INC.,
UNITED BANCORP, INC.,
RENASANT BANK, INC.,
FACEBOOK, INC.,
MICROSOFT, INC.,
TESLA, INC.,
ALPHABET, INC.,
APPLE, INC.,
WAFFLE HOUSE, INC.,
AMAZON, INC.,
DIEBOLD NIXDORF, INC.,
GLOBAL PAYMENTS, INC.,
BOLD CAPITAL PARTNERS,
KHOSLA VENTURES,
Et al.

CASE NUMBER: 3:21-cv-00139

FILED: 02/19/2021
AMENDED: 03/25/2021
04/24/2021

JUDGE: William L. Campbell, Jr.

JURY DEMAND

**FILED**
APR 2 6 2021 DB
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

## FINAL AMENDED COMPLAINT

**COME NOW THE PLAINTIFFS,** Michael Tangredi Boileau and Kyle Joseph Boileau, collectively stated hereafter as the "Plaintiffs", having brought before the Honorable Court the Amended Complaint in the above-styled case against the "Defendants" and having further examined the relevant evidence collected, hereby submit this Final Amended Complaint as follows:

1. **JURISDICTION and VENUE.** The jurisdiction and venue under which the Plaintiffs seek relief for the claims and allegations made hereunder federal law in the Federal Civil Court for the Middle District of Tennessee.

2. The Plaintiffs filed the original Complaint with the Court on February 19th, 2021. Subsequently, the Plaintiffs filed the Amended Complaint with the Court on March 25th, 2021.

   **All changes made herein are reflected within the Parties To Complaint detailed below. The Plaintiffs do not anticipate there to be any filings hereafter whereby the statements, allegations, and/or parties described herein are subsequently Amended.**

3. **PARTIES TO COMPLAINT.** The Parties to the Final Amended Complaint are as follows:

1. **Plaintiff Michael Tangredi Boileau** is a United States citizen and may be notified of any information regarding the above-styled case via United States Mail at 107 Alhambra Circle, Nashville, Tennessee 37207.

2. **Plaintiff Kyle Joseph Boileau** is a United States citizen and may be notified of any information regarding the above-styled case via United States Mail at 107 Alhambra Circle, Nashville, Tennessee 37207.

On information and belief, the following Defendants are corporate entities, each of which acted by and through other Defendants listed herein, as well as potentially by and through the actions of other individuals still unknown, in order to conspire against the Plaintiffs in the manner described herein and throughout the evidence collected by the Plaintiffs:

3. **Berkshire Hathaway, Inc.** is traded publicly under stock exchange symbols "BRK-A" and "BRK-B" and is headquartered at 3555 Farnam Street, Omaha, Nebraska 68131.

4. **American Express, Inc.** is traded publicly under stock exchange symbol "AMX" and is headquartered at 200 Vesey Street, New York, New York 01285.

5. **Bank of America, Inc.** is an FDIC insured institution traded publicly under stock exchange symbol "BAC" and is headquartered at 100 North Tryon Street, Charlotte, North Carolina 28255.

6. **United Bancorp, Inc.** is traded publicly under stock exchange symbol "UBCP" and is headquartered at 201 South Fourth Street, PO Box 10, Martins Ferry, Ohio 43935.

7. **Renasant Bank, Inc.** is an FDIC insured institution traded publicly under stock exchange symbol "RNST" and is headquartered at 209 Troy Street, Tupelo, Mississippi 38801.

8. **Microsoft, Inc.** is traded publicly under stock exchange symbol "MSFT" and is headquartered at 1 Microsoft Way, Redmond, Washington 98052.

9. **Facebook, Inc.** is traded publicly under stock exchange symbol "FB" and is headquartered at 1 Hacker Way, Menlo Park, California 94025.

10. **Tesla, Inc.** is traded publicly under stock exchange symbol "TSLA" and is headquartered at 3500 Deer Creek Park, Palo Alto, California 94304.

11. **Amazon, Inc.** is traded publicly under stock exchange symbol "AMZN" and is headquartered at 410 Terry Avenue, Seattle, Washington 98109.

12. **Diebold Nixdorf, Inc.** is traded publicly under stock exchange symbol "DBD" and is headquartered at 5995 Mayfair Road, North Canton, Ohio 44720.

13. **Alphabet, Inc.** is traded publicly under stock exchange symbol "GOOGL" and is headquartered at 1600 Amphitheater Way, Mountain View, California 94043.

14. **Apple, Inc.** is traded publicly under stock exchange symbol "AAPL" and is headquartered at 1 Apple Park Way, Cupertino, California 95014.

15. **Waffle House, Inc.** is a privately held entity which is headquartered at 5986 Financial Drive, Norcross, Georgia 30071.

16. **SouthComm, Inc.** is a privately held entity which is headquartered at 210 12th Avenue South, Nashville, Tennessee 37203.
17. **BOLD Capital Partners** is a privately held entity which is headquartered at 225 Santa Monica Blvd, Suite 500, Santa Monica, California 90401.
18. **Khosla Ventures, Inc.** is a privately held entity which is headquartered at 2128 Sand Hill Road, Menlo Park, California 94025.
19. **Global Payments, Inc.** is traded publicly under stock exchange symbol "GPN" and is headquartered at 3550 Lenox Road, Atlanta, Georgia 30326.
20. **Tangredi, Inc.** is a privately held entity which is incorporated in the State of Alabama.
21. **T-Com Associates, Ltd.** is a privately held entity which is incorporated in the State of New Jersey.

On information and belief, the following Defendants are United States citizens who acted, in individual capacities and as agents for the corporate entities above for the purpose of perpetrating the acts herein against the Plaintiffs:

22. **Jeffrey Schmidt** is a United States probation officer for the Middle District of Tennessee.
23. **Britton Shelton** is a United States probation officer for the Middle District of Tennessee.
24. **Wendi Potter** is a United States probation officer for the Middle District of Tennessee.
25. **Justin A. Case** is a United States probation officer for the Southern District of Iowa.
26. **Kimberly Ruyhle** is a United States probation officer for the Southern District of Iowa.

On information and belief, the following Defendants are United States citizens and executive directors and/or corporate officers of Defendant Berkshire Hathaway, Inc.:

27. **Warren Buffet**.
28. **Charles Munger**.
29. **Kenneth Chennault**.
30. **Peter Chernin**.
31. **Charlotte Guyman**.
32. **Susan Decker**.
33. **Ajit Jain**.
34. **Marc Hamburg**.
35. **Thomas Olson**.
36. **Walter Scott**.
37. **Howard Buffett**.
38. **William Gates III**.

On information and belief, the following Defendants are United States citizens and executive directors and/or corporate officers of Defendant American Express, Inc.:

39. **Stephen J. Squeri**.
40. **Doug Buckminster**.
41. **Mohammaed Badi**.
42. **Pierric Beckert**.
43. **Jeff Campbell**.
44. **J. Andres Espinosa**.
45. **Alan Gallo**.
46. **Marc Gordon**.
47. **Monique R. Herena**.
48. **Raymond Joabar**.
49. **Anna Marrs**.
50. **Glenda McNeal**.
51. **Rick Petrino**.
52. **Denise Pickett**.
53. **Elizabeth Rutledge**.
54. **Laureen E. Seeger**.
55. **Jennifer Skyler**.
56. **Anre Williams**.
57. **Thomas Baltimore**.
58. **Ralph De La Vega**.
59. **Karen L. Parkhill**.
60. **Theodore J. Leonsis**.
61. **Daniel L. Vasella**.
62. **Linda W. Wardell**.
63. **Christopher D. Young**.
64. **Ronald A. Williams**.
65. **Charles E. Phillips**.
66. **Lynn A. Pike**.
67. **Anne Lauvergeon**.
68. **Michael O. Leavitt**.
69. **Charlene Barshefsky**.
70. **John J. Brennan**.

On information and belief, the following Defendants are United States citizens and executive directors and/or corporate officers of Defendant Bank of America, Inc.:

71. **Brian T. Moynihan**.
72. **Denise L. Ramos**.
73. **Thomas J. May**.
74. **Sharon L. Allen**.
75. **Susan S. Bies**.
76. **Jack O. Bovender**.
77. **Frank P. Bramble, Sr.**
78. **Pierre J.P. de Weck**.
79. **Arnold W. Donald**.
80. **Linda P. Hudson**.
81. **Monica C. Lozano**.
82. **Christopher Hernandez**.
83. **Sheri Bronstien**.
84. **David G. Lietch**.

85. **David W. Ducommun.**
86. **Dean C. Athanasia.**
87. **Monica C. Lozano.**
88. **Andrea B. Smith.**
89. **Catherine P. Bessant.**
90. **Lionel L. Nowell III.**
91. **Clayton S. Rose.**
92. **Michael D. White.**
93. **Thomas D. Woods.**
94. **R. David Yost.**
95. **Maria T. Zuber.**

On information and belief, the following Defendants are United States citizens and executive directors and/or corporate officers of Defendant Renasant Bank, Inc.:

96. **Scott A. Everson.**
97. **Randall M. Greenwood.**
98. **Matthew Fredrick Branstetter.**
99. **Lisa Ann Basinger.**
100. **Richard L. Riesbeck.**
101. **John M. Hoopingarner.**
102. **James W. Everson, Sr.**

On information and belief, the following defendants are United States citizens and executive directors and/or corporate officers of Defendant United Bancorp, Inc.:

103. **Edward Robinson McGraw**
104. **C. Mitchell Waycaster.**
105. **James C. Mabry IV.**
106. **Kevin D. Chapman.**
107. **John M. Creekmore.**
108. **Jill V. Deer.**
109. **Donald Clark, Jr..**
110. **Albert J. Dale, III.**
111. **Marshall H. Dickerson.**
112. **Connie L. Engel.**
113. **John T. Foy.**
114. **Rick R. Hart.**
115. **Richard L. Heyer, Jr..**
116. **Neal A. Holland, Jr..**
117. **Michael D. Shmerling.**
118. **Sean M. Suggs.**
119. **Gary D. Butler.**

On information and belief, the following defendants are United States citizens and executive directors and/or corporate officers of Defendant Facebook, Inc.:

120. **Mark Zuckerburg.**
121. **Sheryl Sandber.**
122. **Dave Wehner.**

123. **Chris Cox.**
124. **David Fischer.**
125. **Jennifer Newstead.**
126. **Peggy Alford.**
127. **Marc Andreessen.**
128. **Andrew W. Houston.**
129. **Nancy Killefer.**
130. **Robert M. Kimmitt.**
131. **Peter A. Thiel.**

   On information and belief, the following defendants are United States citizens and executive directors and/or corporate officers of Defendant Microsoft, Inc.:

132. **Satya Nadella.**
133. **Tracey T. Travis.**
134. **John W. Thompson.**
135. **Ried Hoffman.**
136. **Hugh Johnston.**
137. **Teri List.**
138. **Sandra E. Peterson.**
139. **Penny Pritzker.**
140. **Charles W. Scharf.**
141. **John W. Stanton.**
142. **Emma Walmsley.**
143. **Padmasree Warrior.**

   On information and belief, the following defendants are United States citizens and executive directors and/or corporate officers of Defendant Tesla, Inc.:

144. **Elon Musk.**
145. **Zachary Kirkhorn.**
146. **Andrew Baglino.**
147. **Jerome Guillen.**
148. **Ira Ehrenpries.**
149. **Antonio J. Gracias.**
150. **James Murdoch.**
151. **Robyn M. Denholm.**
152. **Larry Ellison.**
153. **Hiro Mizuno.**
154. **Kimbal Musk.**
155. **Kathleen Wilson-Thompson.**

   On information and belief, the following defendants are United States citizens and executive directors and/or corporate officers of Defendant Amazon, Inc.:

156. **Jeffrey P. Bezos.**
157. **Keith B. Alexander.**
158. **Jamie S. Gorelick.**
159. **Daniel P. Huttenlocher.**
160. **Judith A. McGrath.**

161. **Indra K. Nooyi.**
162. **Jonathan J. Rubenstein.**
163. **Thomas O. Ryder.**
164. **Patricia Q. Stonesifer.**
165. **Wendell P. Weeks.**
166. **Brian T. Olsavsky.**
167. **David H. Clark.**
168. **Andrew R. Jassy.**
169. **Shelley L. Reynolds.**
170. **David A. Zapolsky.**

On information and belief, the following defendants are United States citizens and executive directors and/or corporate officers of Defendant Diebold Nixdorf, Inc.:

171. **Lauren C. States.**
172. **Jeffrey Rutherford.**
173. **Octavio Marquez.**
174. **Hermann Wimmer.**
175. **Ulrich Naher.**
176. **Manish Choudhary.**
177. **Olaf Heyden.**
178. **Elizabeth Patrick.**
179. **David Caldwell.**
180. **Jonathan Leiken.**
181. **Julian Sparkes.**
182. **Elizabeth Radigan.**
183. **Devon Watson.**
184. **Arthur F. Anton.**
185. **Bruce Bensako.**
186. **Reynolds C. Bish.**
187. **Ellen M. Costello.**
188. **Phillip R. Cox.**
189. **Alexander Dibelius.**
190. **Matthew Goldfarb.**
191. **Gary G. Greenfield.**
192. **Gerrard B. Schmid.**
193. **Kent M. Stahl.**
194. **Lauren C. States.**

In addition to the foregoing, each of the following individuals acted, both individually and collectively, against the Plaintiffs for the same concerted and malicious purpose:

195. **Vincent Bambinelli.**
196. **Gina Bambinelli.**
197. **Sofia Bambinelli.**
198. **Nicholas Izor.**
199. **Joey Bambinelli.**
200. **Tammy Bambinelli.**
201. **Richard Ferrigno.**
202. **Melissa Ferrigno.**

203. Vanessa Ferrigno.
204. Kevin Tangredi.
205. John Tangredi.
206. Frances Tangredi.
207. Lacey Tangredi.
208. Danielle Tangredi.
209. Alexis Tangredi.
210. Paul Waterman.
211. Alden Waterman.
212. Katherine Baker.
213. Taryn Thompson.
214. Keaton Thompson.
215. Kimberly Hutton.
216. Ally Scofield.
217. Lee Terwilliger.
218. Michael D'Amico.
219. Corbin Suggs.
220. Robin Stevens.
221. McKinley Dunn.
222. Warren Hawkins.
223. Mary Catherine Hutto.
224. Luke Duncan.
225. Luke Chapman.
226. Jacob Arijanto.
227. Tiffany Larkin Myers.
228. Kaylee Brooks.
229. Chelsea Graham.
230. Ashley Helton.
231. Brandon Cole.
232. Mason Wald.
233. Sarah O'Connell.
234. Fabiano Santos.
235. Leah Mackey.
236. John Butler.
237. Andrea Diebold.
238. Alethea Beeker.
239. Russell Ries.
240. Christopher Futrell.
241. John Choate.
242. Stephen Zurn.
243. Laura K. Lightfoot.
244. Dennis Feltner.
245. James Alvarez.
246. Meryl McCargar.
247. Amanda Muller.
248. Stephanie West.
249. Lindsey Kirkendall.
250. Dustin Kirkendall.
251. Julia Hale.
252. Melissa Montgomery.

253. **Hillary Brooke Haenlien.**
254. **Nikki Ledbetter.**
255. **Brennan McMahon.**
256. **Traci Loring.**
257. **Katharine Braman.**
258. **Mark Wise.**
259. **Andrew De Stadler.**
260. **Mark Wise.**
261. **Sarah Fowler.**
262. **Sarah Eastman.**
263. **Mary Hutto Blanton.**
264. **Nicole Knowles.**
265. **Danielle Solis**
266. **Christopher Cornett**
267. **Devri Depriest**
268. **Kevin Delesk.**
269. **Karl Dickerson.**
270. **Joseph Houston White.**
271. **Jesse Cunningham a/k/a "Jesse Monroe".**
272. **Samantha Schaapveld.**
273. **Brianna Hole.**
274. **Raeya Jordan.**
275. **Trudy Harding.**
276. **Britton Pentakill.**
277. **Benji Elliott.**
278. **Richard Roberts.**
279. **James Cameron.**
280. **Adam Dread.**
281. **John Roberts.**
282. **David Cañas.**
283. **Larry Hayes, Jr.**
284. **Renata Lanier**.
285. **Barbara Milhelm.**
286. **Traci Loring.**
287. **Sharon Cobb.**
288. **Mary Lou Jespen.**

4. **STATEMENTS of FACT.** The Plaintiffs collectively, unless stated otherwise, hereby allege the following acts to have been committed by the Defendants, either individually or collectively:

   1. As used herein, the "Events", shall refer to the sequence and series of occurrences which took place between in or around March of 2017 and, as of the filing of this Complaint, the Events are considered by the Plaintiffs to be ongoing.

   2. Plaintiffs Michael and Kyle Boileau are a couple married in Rutherford County, Tennessee upon issuance of a marriage certificate on May 1, 2017.

   3. In or around mid-2016, the Plaintiff Michael Boileau copyrighted a fictional manuscript for a novel based on true events titled "Scatterbrain." Subsequently, Plaintiff Michael Boileau published the novel online via the

virtual literary marketplace hosted on "amazon.com." The novel was available for sale for a very brief period of time prior to its removal by the Plaintiff in order to make a few slight edits to its content, and during this time period, only a single copy was sold.

4. Since as early as March 2017, the Events have been broadcast at a sub-audible volume via an unknown Carrier by the Defendants, or by some third party unmentioned herein.

5. Plaintiff Michael Boileau has collected an extensive volume of audio footage in ".wav" format in order to prove the allegations contained herein.

6. On or around February 9th, 2020, the Defendants began to force communication with Plaintiff Michael Boileau. This communication channel is, at the time of filing this Complaint, still open against the will of the Plaintiffs.

7. The following terms are hereby defined for use herein and on subsequent filings in support thereof:

    1. **"Telepathic Technology"** hereinafter refers to a smartphone application, coded data, script, function or collection of functions, formulas, algorithms, and/or other relevant portions of data which when compiled are capable of telepathic communication, whether or not proprietary. Utilizing this, a channel of communication may be opened between two or more individuals using solely the involved individual's brain, and emitted brainwaves via electromagnetic dissemination, and therefore not requiring the use of vocal chords, writing of any signs, characters, or symbols, or the transcription of thoughts, ideas, or statements via other technology, such as word processing, e-mail, text message, or other type of communication.

    2. **"Neurological Mining"** shall refer to the unauthorized collection, obtaining, maintaining, recording, logging, or any other manner which is used to collect or obtain data, including but not limited to ideas, concepts, images, sounds, memories, statistics or other data related to bodily functions, or any other information which may only be obtained via the access to a persons neurological functions via the receipt of electroencephalographic information or any other manner in which an individual receives such data using a person's neurological functions. Neurological Mining, as defined herein, can take place in five forms:

        a. **"Thought-Fracking"** shall refer to the unauthorized obtaining, recording, copying, storing, analyzing, encoding, decoding, or any other viewing or processing of data from a victim's thought processes, internal monologue, or other neurological or subliminal process.

        b. **"Video Eavesdropping"** shall refer to the unauthorized obtaining, maintaining, monitoring, listening, encoding, decoding, and/or recording of audible sounds or voices from a victim's own eyes via Neurological Mining.

        c. **"Otolarynological Eavesdropping"** shall refer to the unauthorized obtaining, maintaining, monitoring, listening,

encoding, decoding, and/or recording of audible sounds or voices from a victim's own ears via Neurological Mining.

d. **"Memory Poaching"** shall refer to the unauthorized obtaining, recording, copying, storing, analyzing, encoding, decoding, or any other viewing or processing of data, including but not limited to audio, video, and/or other data associated therewith, from a vicim's memories or recollection utilizing the aforementioned Technology.

e. **"Dream Surfing"** shall refer to the unauthorized viewing, collecting, storing, duplicating, modifying, and/or interacting with in any manner, whether invasive or not, a victim's dreams, sleep patterns, electroencephalographic activity, or other brain or neurological activity while a victim is asleep and is unaware, having not authorized, access to such information.

3. **"Maliciously Obtained Data"** shall refer to any data downloaded, uploaded, obtained, copied, recorded, encoded, decoded, or which was otherwise accessible as a result of Neurological Mining, as defined above, as well as any data downloaded, uploaded, obtained, copied, recorded, encoded, decoded, or which was otherwise accessible as a result of Neurological Mining, as defined above, which specifically includes login items such as usernames, passwords, or keys, as well as personally identifying information, of the Plaintiff, or, via Video Eavesdropping, of the other individuals who at any time had authorized their personally identifying information to be in the possession of the Plaintiff.

4. **"Purported Scenario"** shall refer to an event broadcast via radio frequency intended to cause either or both of the Plaintiffs to undergo substantial emotional distress, to change their previously intended or planned course of action in their lives, or to otherwise deceive, fool, trick, mislead, control, or manipulate the Plaintiffs for personal gain or to further the Defendants' plans, either individually or collectively. Each Purported Scenario is a violation of USC 18 § 1343, USC 18 § 1038, USC 18 § 2261A, as well as other statutes as defined specifically hereunder.

5. **"Copyrighted Novel"** shall refer to the fictional literary work based on true events created by Plaintiff Michael Boileau titled "Scatterbrain." The Plaintiff copyrighted this novel on May 22nd, 2016, under the pseudonym "Michael Damiana", copyright office registration number TXu 2-012-068.

8. Following the aforementioned initial contact and continuing through the filing of this Complaint, a series of Scenarios, as defined above, broadly ranging in content and perpetrated by the Defendants, either individually or collectively, was broadcast via the Carrier. Each one of these scenarios constitutes a violation of United States Code 18 § 1038, as it is considered a hoax intended to spread false information or belief. Each scenario also furthers the Defendants' violation of United States Code 18 § 2261a, due to the Defendants' unauthorized electronic surveillance of the Plaintiff, as well as

their harassment and obvious attempt to inflict emotional and/or psychological harm, distress, or damage and attempt to force a commission of suicide in order to cover up the Events as they transpired due to their severe culpability and the extent to which the Plaintiff is able to prove such.

9. In violation of United States Code 18 § 1343, the Defendants', each time that false information was broadcast with the intent of either Plaintiff acting on such information, perpetrated fraud by radio.

10. In violation of United States Code 18 § 249, the Defendants are also alleged as having committed a series of hate crimes, due to the language used to describe the Plaintiffs throughout their illegal surveillance, as well as what can easily be determined to be a targeted orchestration of victimization against the Plaintiffs as either homosexual, bisexual, in addition to as felons, drug users, and also as it is apparent that a large number of the Defendants mistakenly call the Plaintiffs "[mentally] retarded", signifying that they believed such to be true, however simply were victimizing people who do not fall under that classification, but it was intended to target them as individuals who suffer from a mental handicap.

11. The Plaintiffs believe that, due to the capability of the Technology to view memories utilizing electromagnetic signatures for a persons neurological functions, the Defendants have committed a series of violations of United States Code 18 § 2252, as any memories from a person which derived from a period of time prior to their eighteenth birthday, which are depicted as decoded or decrypted data yielding images or video, do in fact contain portions of data which fall under the definitions under United States Code 18 § 2256. The Defendants willfully and maliciously harassed the Plaintiffs utilizing the underage memories of the Plaintiffs as a weapon with which to attempt to bully, embarrass, blackmail, or sabotage the lives of the Plaintiffs.

12. Plaintiff Michael Boileau was harassed via the methods described herein regarding varying criminal allegations, to the extent that the Defendants' broadcast was purporting to be a "trial via radio frequency", or some other mechanism to attempt to coerce or bully the Plaintiff into believing that the Defendants' were acting under the government's request or instruction to do so. Obviously untrue, the Plaintiff responded that law enforcement would have to officially make such accusations or allegations for them to be considered or perceived to be anything but a furtherance of the harassing element of the Events. However, to date, not a single allegation has been made in any conventional manner.

13. In or around March of 2020, Plaintiff Michael Boileau placed a report with Nashville Metro Police regarding the Events which had transpired up until that point. At the time, the impression he was under was that his residence was set up by one or more of the defendants with speakers, microphones, and/or video surveillance in order to harass him. The Plaintiff was, at the time, unaware of the Technology and its capabilities.

14. In or around April of 2020, Plaintiff Michael Boileau placed a report with Nashville Metro Police regarding the Events which had transpired up until that point and the impression he was under, considering that the purveyance of false information, hoaxes, and attempts to deceive and defraud via the Carrier.

15. Plaintiffs Michael Boileau and Kyle Boileau were unnecessarily separated and deprived of communication with each other since June of 2020. The two Plaintiffs are still being kept from communication as a result of the Events surrounding the circumstances described herein.
16. On or around September 15th, 2020, Plaintiff sent via regular mail to various Defendants, a letter stating the possibility of an unauthorized form claiming or purporting to be a valid or properly executed power of attorney for the Plaintiff Michael Boileau.
17. During summer of 2020, Plaintiff filed an identity theft report with the official site "idtheft.gov" to report either unauthorized or improperly disclosed use of his personally identifiable information in order to apply for accounts under his name since the beginning of the year 2020.
18. On August 17th, 2020, Plaintiff Michael Boileau placed a phone call to Nashville's field office for the Federal Bureau of Investigation and made a statement regarding the previously stated use of his personal identity, as well as the illegal and unauthorized surveillance and contact being forced upon him. Following that phone call, on August 24th, 2020, Plaintiff Michael Boileau placed a report with Nashville Metro Police to make similar statements regarding the impression he was under at that time based on the data being broadcast by the Defendants' at the time.
19. In early September of 2020, Plaintiff Michael Boileau provided in person a copy of a settlement offer and an accompanying memorandum to his mother, Maria Tangredi, as he was under the impression at the time that Defendant Vincent Bambinelli, who is an uncle to both the Plaintiff and his mother, was in contact with her directly and in depth regarding the resolution of the matters described herein. This offer for settlement and release had an expiration date ten (10) days from its issuance. This document was signed for to verify its receipt. Subsequently, no response was received by any party listed thereon with regard to its offer to settle these matters.
20. Plaintiff Michael Boileau believes that, based on what he has heard broadcasted, that the Defendants, in an attempt to sabotage his life further and frustrate his efforts in resolving the issues at hand, purchased or otherwise acquired possession of the real property located at 1412 Brick Chuch Pike, Nashville, Tennessee 37207, or the building situated thereon. Subsequently, the Plaintiff was required to relocate his belongings, as he resided on the property, and his employment was terminated. Shortly after New Year's Day 2021, the Plaintiff vacated the property.
21. On June 21st, 2019, Plaintiff Michael Boileau purchased a smart wrist band branded as a "CUFF" from McKay Used Books for $4.99. It is believed that this item was utilized to scan the electromagnetic signature from Plaintiff Michael Boileau's brain by one or more of the Defendants.
22. In November of 2019, Plaintiff Michael Boileau received via USPS delivery, at the address of his employment and residence at the time 1412 Brick Church Pike, Nashville, Tennessee 37207, an unbranded tablet which is believed to have been utilized to scan the electromagnetic signature from Plaintiff Michael Boileau's brain by Defendant Microsoft, as well as the employees of Defendant Microsoft who are Defendants hereto.

23. On January 30, 2021, Plaintiff sent, via certified mail, letters to Defendant Berkshire Hathaway, Defendant Vincent Bambinelli, and the World Health Organization exclaiming clearly that there are no current forms, documents, or files which claim or purport to be, assign, or offer valid power of attorney for either Plaintiff.
24. In the beginning of February 2021, Plaintiff sent via regular mail a letter to the legal department of Berkshire Hathaway, as well as its chairman Defendant Buffet, describing as vividly as possible his general sentiment via the language therein. Attached therewith were two SD cards containing a sample of the audio evidence which has been collected to illustrate the extent to which the company is culpable and implicated regarding the Events.
25. On February 10th, 2021, Plaintiff Michael Boileau placed a phone call to Nashville's field office for the Federal Bureau of Investigation and made a brief statement regarding the Events. The Plaintiff was instructed to mail in a summary of what was taking place, as well as the recordings which were obtained by the Plaintiff as stated above.
26. As previously stated, a conversation was unknowingly captured at a sub-audible volume in the normal course Plaintiff Michael Boileau's employment with Motel 6 within a video recording. This recording was on March 7th, 2017 at 8:56p.m.
27. On February 14th, 2021, Plaintiff Michael Boileau sent via United States Postal Service to Nashville Field Office for the Federal Bureau of Investigation a summary of the events which have been perpetrated against both him and Plaintiff Kyle Boileau, accompanied by a collection of files totaling between 400-500GB, which were collected between August 2020 and November 2020, and a separate flash drive containing a single audio file, which was the recording, lasting roughly 140 seconds, at 8:56p.m. from March 7th, 2017.
28. Based on a conversation which was recorded as on or around March 7th, 2017, Defendant Berkshire Hathaway received a contract, or was stated by Defendant O'Connell to Defendant Myers to have received a contract, with the United States government to keep under surveillance, investigate, and/or observe, "the individual known as "Scatterbrain." The total value of the contract, according to the Defendants, was one trillion U.S. dollars ($1,000,000,000,000.00).
29. The aforementioned conversation was contained in audio recorded via sub-audible interference on a video recorded by the Plaintiff Michael Boileau for work-related purposes as the property manager for a Motel 6 franchisee. At the time, the Plaintiff was unaware of this this discussion between these two defendants, however the manner in which the Events have been broadcast provide for it to have been inadvertently captured by the Plaintiff and for it to be used to prove these allegations.
30. In addition to the conversation between Defendant Myers and Defendant O'Connell which was found to be on the aforementioned recording, there are at least ten simultaneous conversations, which were multiplexed and subsequently transmitted then captured by the Plaintiff.

31. The file contains a total of at least 8 conversations, of what seems to be some type of meet-and-greet or social event where the primary portion of the various Defendants either co-conspired or discussed a previously agreed upon collective effort to perpetrate against the Plaintiffs. It is believed that this event was hosted at the J.W. Marriott at 201 8th Avenue South, Nashville, TN 37203.
32. The Defendants who were revealed to be recorded on this file are as follows: Warren Buffett, Charles Munger, Sarah O'Connell, Tiffany Myers, Alethea Beeker, Stephanie West, Kenneth Chennault, Joseph White, Wendi Potter, Britton Shelton, Katherine Baker, Warren Hawkins, Vincent Bambinelli, Gina Bambinelli, Brian Moynihan, and Trudy Harding. Additionally, Ashok Chudasama and Simitt Chudasama were parties to the conversations captured on this audio recording.
33. Based on the conversations contained in this recording, the purpose carried, both individually and collectively, by the corporate Defendants, by and through their agents present that evening, was malicious and willfully directed toward the Plaintiff Michael Boileau and his husband.
34. The Plaintiff's given name, Michael Gennaro Tangredi, can be clearly heard on the audio recording. Defendant Chennault states, "...we [AmEx] can finally get our revenge against Michael Gennaro Tangredi...", within the same dialogue as when Defendant Chennault held himself out as the chairman and CEO of Defendant American Express.
35. Defendant Moynihan expresses similar sentiments to those of Defendant Chennault immediately after holding himself out to be the same for Defendant Bank of America. Defendant Harding states that she is the director of security for "*all three*", referring to Defendants American Express, Bank of America, and United Bancorp.
36. Furthermore, Defendant Beeker, who was present as an agent for Defendant Microsoft and Defendant West, who is believed to have been present as an agent for Defendant Berkshire, discuss how the Plaintiff Michael Boileau is a "*plight on society.*" Either Defendant Beeker or Defendant O'Connell goes on saying how their collective efforts, as she states, "*...between Microsoft, Amex, Berkshire, Bank of America, Renasant Bank...we can finally do away with Michael G. Tangredi.*"
37. Defendant Chennault states that he had "...a plan...to have his [the Plaintiff's] ex-boyfriend nag him..." in an attempt to coerce the Plaintiff into committing suicide."
38. Defendant Potter can be quoted as saying that "this event will be forever known as Project Scatterbrain", and that this will make history books.
39. Defendants Potter, Shelton, Ruyhle, and Schmidt discuss with others present that there is a "grand prize" of one hundred billion dollars ($100,000,000,000.00) to coerce either Plaintiff to commit suicide. They state that everyone else is only "competing" to get Plaintiff Michael Boileau to commit suicide, but the individuals who were a part of the United States Department of Probation were also eligible to receive a one hundred billion dollar prize if they were able to coerce Plaintiff Kyle Boileau to commit suicide.

40. Defendants Buffett and Munger hold themselves out as executives of Defendant Berkshire Hathaway, stating that they were able to secure a one trillion dollar ($1,000,000,000,000.00) contract with the United States government to monitor *"the individual known as Scatterbrain."*

41. Defendants Vincent Bambinelli and Gina Bambinelli converse about keeping the events about to unfold undisclosed to the Plaintiff Michael Boileau's mother, Maria Tangredi. Defendant Vincent Bambinelli is the Plaintiff's uncle, and his daughter, Defendant Gina Bambinelli, is the Plaintiff's cousin and godmother.

42. Based on a series of conversations recorded by the Plaintiffs on or around February 2nd, 2020, Plaintiff Kyle Boileau and his ex-girlfriend, Defendant Schaapveld, were approached by individuals working with Defendant Vincent Bambinelli, who were instructed by him to impersonate agents of the United States Secret Service, in furtherance of the Defendants' attempts to hide the scheme which they engaged in perpetrating against the Plaintiffs. Those recordings contain Defendant Vincent Bambinelli instructing individuals, believed to be Defendant Richard Ferrigno and his wife Defendant Melissa Ferrigno, who are both cousins of Plaintiff Michael Boileau, how to impersonate Secret Service agents when speaking with Plaintiff Kyle Boileau and Defendant Schaapveld, stating specifically to *"… use my [Defendant Vincent Bambinelli's] name so that if it comes back to us it will be confusing to the government…"*

43. An earlier recording, captured on September 14th, 2017, contains Defendant Vincent Bambinelli speaking with Defendant Richard Ferrigno about him *"being a secret service agent for a couple of years"*, referring to an impersonation in furtherance of the malicious conspiracy to which they were both willing participants. The two also discuss the Telepathic Technology, as well as Defendant Richard Ferrigno utilizing the technology for masturbatory purposes, deeming it *"the perfect gift for a child molester."* Additionally, Defendant Vincent Bambinelli indicates that there is a one trillion dollar government contract, as well as that his nephew, Plaintiff Michael Boileau, is in fact the individual known as "Scatterbrain."

44. Defendant Vincent Bambinelli discusses, on multiple recordings, how the government is unaware of Plaintiff Michael Boileau's innocence regarding the portion of the Copyrighted Novel which portrays the protagonist as a potential domestic terrorist. Defendant Gina Bambinelli, on information and belief, modified the Telepathic Technology to be able to access an individual's memories, as well as other capabilities which were unavailable in its previous state.

45. Affidavits in support will be made and entered into evidence as exhibits hereto upon the completion of organizing and enhancing the vast array of recordings which were obtained in order to prove this conspiracy beyond any reasonable doubt or preponderance.

46. Each of the corporations which are Defendants hereto have, through their corporate governance, each distributed a copy of the Copyrighted Novel, as defined above. It is believed that a vast majority, if not each and every employee, either purchased, or received free-of-charge, at least one copy of the Copyrighted Novel, as defined above, in violation of 17 U.S.C. § 506(a),

18 U.S.C. § 371, as well as other statutes as described herein. Potentially, a total of over one million individuals who are employed by Defendants Berkshire, American Express, Bank of America, United Bancorp, Renasant, Tesla, Facebook, Microsoft, and Waffle House received the Copyrighted Novel in this illicit, unauthorized manner for the sole purpose of furthering the malicious conspiracy detailed herein.

47. In addition to the above-stated unauthorized use of the Copyrighted Novel, at least one of the corporate Defendants made unauthorized modifications to the Copyrighted Novel, potentially changed the author's name in an attempt to guise the material, and subsequently distributed it in order to paint the Defendant in a false, negative, and/or misleading light, in violation of 18 U.S.C. § 1341, as well as in furtherance of the malicious conspiracy detailed herein.

48. Each of the corporations which are Defendants hereto is believed to distribute a copy of the Telepathic Technology, as defined above, to a number of employees, in addition to each company's executive staff, for the sole purpose of furthering the malicious conspiracy detailed herein.

49. The Defendants, both individually and collectively, conspired to and successfully did violate 18 USC § 2 and 18 USC § 2261A, which states:

> "*Whoever* (1) is present within….the United States….with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that— (A) places that person in reasonable fear of the death of, or serious bodily injury to — (i) that person; (ii) an immediate family member (as defined in section 115) of that person; (iii) a spouse or intimate partner of that person; or (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of subparagraph (A); or *(2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that…. (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A), shall be punished as provided in section 2261(b) or section 2261B, as the case may be.*"

48. The Defendants, both individually and collectively, conspired to and successfully did violate 18 USC § 1038(b), which, in addition to criminal penalties, specifically provides for civil damages as follows. Each falsely portrayed event, above-defined as a Purported Scenario, is a violation of this statute which has entitled the Plaintiffs to collect damages:

> "*Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will*

> *take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title…"*

49. The Defendants, both individually and collectively, conspired to and successfully did violate 18 USC § 1343 in order to perpetrate the malicious conspiracy and its collective intents on the Plaintiffs by the means of propagation of false pretense, fraudulent statements and promises, misrepresentations of events, and impersonations of individuals both involved and uninvolved:

    > *"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both… "*

50. The Defendants, both individually and collectively, conspired to and successfully did violate 18 USC § 911 and 18 USC § 912 in various instances, whereby individual citizens and officers of the United States were impersonated for the sole purpose of the furtherance of the conspiracy against the Plaintiffs.

51. The Defendants, both individually and collectively, conspired to and successfully did violate 18 USC § 249 by and through the language used throughout the Purported Scenarios, as well as other unwanted communication with the Plaintiffs throughout the Events, and conversations with each other which were captured due to the continually open communication channel as described above.

52. The Plaintiffs reiterate the violations of copyright infringement laws as detailed above under titles 17 U.S.C. § 506(a) and 18 U.S.C. § 371.

53. The Defendants collectively conspired to and successfully did violate 18 USC § 241, as well as each in an individual capacity furthered the conspiracy against the Plaintiffs to hinder their enjoyment of the privileges afforded by the United States Constitution as follows:

    > *"If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same…"*

**THE PLAINTIFFS**, having asserted the foregoing claims and allegations, each individually and collectively, hereby request the following as relief for the claims set forth in violation of 18 USC § 2261a, 18 USC § 1038, 18 USC § 1343, 18 USC § 911, 18 USC § 912, 18 USC § 249, 18 USC § 241, 18 USC § 1341, 17 USC § 506(a), and 17 USC § 371 as well as other violations which were willfully and knowingly committed by the Defendants, individually or collectively:

1. In the form of injunctive relief, whereby each Defendant is ordered to discontinue the illegal and unauthorized surveillance of the Plaintiffs and unauthorized use of

their personal data to further their illicit research and medical experiments, whether or not such research and/or experiments are invasive.

2. In an amount of damages, including but not limited to punitive damages and compensatory damages, which the honorable Court deems fair and appropriate in consideration of the evidence presented in connection with this Complaint and the allegations contained herein.

3. In an amount of treble damages which the honorable Court deems fair and appropriate in consideration of the evidence presented in connection with this Complaint and the allegations contained herein, taking also into account the aforementioned request for damages, including but not limited to compensatory and punitive damages.

4. In any other manner, compensatory or otherwise, which the Court may deem necessary, fair or appropriately ordered, after taking into consideration the far-flung and unusual nature of the offenses committed by the Defendants, both collectively or individually, against the Plaintiffs, as well as the degree to which it is apparent of the Defendants' blatant, reckless disregard for the laws of the United States, for the respect, rights and privileges due to the Plaintiffs as citizens, and of course, their lack of consideration for the concepts of both respect and human decency.

**WHEREFORE** the Plaintiffs assert the foregoing Complaint and its allegations, both individually and collectively, the Plaintiffs request the Judgement of the Honorable Court in favor of the relief requested herein as compensation for such claims.

_____        Date:_____
MICHAEL BOILEAU,
*Pro se*


_____        Date:_____
For KYLE BOILEAU,
*Pro se*