UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL TANGREDI BOILEAU and KYLE BOILEAU, | ) ) ) |
| Plaintiffs, | ) ) No. 3:21-cv-139 |
| v. | ) ) Judge Marvin E. Aspen |
| BERKSHIRE HATHAWAY, INC. et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Proceeding *pro se*, Plaintiffs Michael Tangredi Boileau and Kyle Boileau[1] assert that nearly 300 defendants are part of a vast conspiracy that is telepathically transmitting harassing messages to them. Defendants include corporate entities, such as Berkshire Hathaway, American Express, Facebook, Microsoft, Tesla, Amazon, Apple, and Waffle House; business magnates, such as Warren Buffett, Mark Zuckerberg, Bill Gates, Elon Musk, and Jeff Bezos; and lesser-known individuals, such as Michael's relatives and middle school classmates. For the following reasons, we *sua sponte* dismiss Plaintiffs' case under Federal Rule of Civil Procedure 12(b)(1).

## BACKGROUND

Plaintiffs initiated this lawsuit on February 19, 2021. (Dkt. No. 1.) On March 19, Plaintiffs filed an Amended Complaint, and, shortly thereafter, they paid the filing fee. (Dkt.

---

[1] Michael and Kyle are married to each other. (Dkt. No. 21 at 1.) Because both Plaintiffs have the same last name, we hereafter refer to them by their first names.

Nos. 6, 7.)  A little more than a month later, Plaintiffs filed a "Final Amended Complaint."[2] (Dkt. No. 10.)  In their Final Amended Complaint, Plaintiffs seek to enjoin each of the 285 Defendants from surveilling Plaintiffs and using their "personal data to further [Defendants'] illicit research and medical experiments."  (*Id.* at 2–10, 18–19.)  Plaintiffs also seek damages, which, as explained in a later filing, amounts to $3.7 trillion as compensation for Defendants' unauthorized use of Michael's "neurological and biological data" to develop technology capable of telepathic communication.  (*Id.* at 10, 18–19; Dkt. No. 22 at 3.)  Michael also opines that he "is not out of place to request" $100 billion from each corporate defendant and $200 billion from each chief executive officer of any defendant that is a publicly traded company.  (Dkt. No. 22 at 4.)

On April 28, Plaintiffs moved to appoint a receiver, to issue subpoenas, and for a default judgment against Defendants.  (Dkt. Nos. 13–15.)  We denied the motions, and we ordered Plaintiffs to show cause as to why we should not dismiss or sever the case for misjoinder.  (Dkt. No. 17.)  Plaintiffs responded to our show cause order, but the response does nothing to justify including every named Defendant in this single suit.  (*See generally* Dkt. No. 30.)  In the meantime, Plaintiffs moved for an entry of default against Defendants (Dkt. No. 23) and filed three documents without our authorization: (1) an "Affidavit in Support: 'Project Scatterbrain'" from Michael (Dkt. No. 20); (2) an "Affidavit in Support: Background Information" from

---

[2] Plaintiffs disobeyed the Court's instructions and filed their March 19 Amended Complaint without first seeking leave to amend.  (*See* Dkt. No. 5.)  Plaintiffs also did not seek leave to file their Final Amended Complaint, as required by Rule 15, nor did they sign the Final Amended Complaint, as required by Rule 11.  *See* Fed. R. Civ. P. 11(a), 15(a)(2).  Plaintiffs' *pro se* status does not excuse them from complying with court orders or the Federal Rules of Civil Procedure. *See Valentine v. Searcy*, No. 3:11-0048, 2012 WL 370495, at *1 (M.D. Tenn. Feb. 3, 2012). Nonetheless, we have treated the Final Amended Complaint as the operative complaint that sets forth the claims Plaintiffs wish to pursue in this litigation.

Michael (Dkt. No. 21); and (3) "Plaintiffs' Statements of Undisputed Fact in Support of Relief Requested" (Dkt. No. 22). Plaintiffs have submitted three flash drives as "Exhibits" without our permission as well. (*See* Dkt. No. 30 at 1; Dkt. No. 32; Dkt. No. 33.)

On July 1, Berkshire Hathaway and all Berkshire Hathaway-related individuals (collectively, the "Berkshire Hathaway Parties") moved to dismiss Plaintiffs' claims against them under Rules 12(b)(2), (4), (5), and (6). (Dkt. Nos. 24, 25.) Plaintiffs filed a response to the motion to dismiss. (Dkt. No. 29.)

## ANALYSIS

Plaintiffs' motion for default and the Berkshire Hathaway Parties' motion to dismiss are currently pending in this case. We also issued a show cause order regarding misjoinder to which Plaintiffs responded. Before we address these issues, however, we must assure ourselves that we have subject matter jurisdiction over Plaintiffs' case. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *Com. Warehouse Leasing, LLC v. Ky. Transp. Cabinet, Dep't of Highways*, No. 4:18-CV-00045-JHM, 2018 WL 3747466, at *1 (W.D. Ky. Aug. 7, 2018). If we do not, we must dismiss the case without further inquiry. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998); *Taylor v. Owens*, 990 F.3d 493, 496 (6th Cir. 2021).

Federal courts do not have subject matter jurisdiction over "totally insubstantial" complaints. *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S. Ct. 1372, 1378–79 (1974); *Merkobrad v. Weaver*, 57 F. App'x 257, 258 (6th Cir. 2003). Accordingly, we may "*sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) . . . when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). "A

3

case is frivolous if it lacks an arguable basis either in law or in fact." *Clay v. Metro. Gov't*, 46 F. App'x 348, 348 (6th Cir. 2002).

As required, we have liberally construed Plaintiffs' *pro se* pleadings and filings. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). But even liberally construed, Plaintiffs' Final Amended Complaint and their later filings[3] demonstrate that their case lacks an arguable basis in fact.

A case lacks an arguable factual basis if it is based on "fantastic or delusional scenarios." *Abner v. SBC (Ameritech)*, 86 F. App'x 958, 958 (6th Cir. 2004) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28, 109 S. Ct. 1827, 1833 (1989)); *see also Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S. Ct. 1728, 1733 (1992) (a claim is factually frivolous if the factual allegations are "clearly baseless," a category that encompasses fanciful, fantastic, delusional, irrational, or wholly incredible factual allegations). Here, the basic premise underlying all of Plaintiffs' claims is a work of fantasy and delusion. According to Plaintiffs, multibillion dollar companies and high-level executives have conspired with Michael's relatives and former classmates to extract thoughts, images, sounds, and other data from Michael's brain to develop the "Telepathic Technology," which can open a communication channel between two or more individuals using only the individuals' brainwaves emitted via electromagnetic dissemination. (*See* Dkt. No. 10 at 2–10; Dkt. No. 21 at 2; Dkt. No. 22 at 2.) Plaintiffs further allege that Defendants have used the Telepathic Technology and other technologies to telepathically transmit harassing messages to them in an attempt to harm Plaintiffs and convince Plaintiffs to kill themselves. (*E.g.*, Dkt. No.

---

[3] In addition to Plaintiffs' Final Amended Complaint, we have considered Plaintiffs' affidavits and other filings to determine whether we have subject matter jurisdiction over their case. *See Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014); *Carson v. U.S. Off. of Special Couns.*, No. 3:10-CV-57, 2011 WL 13311476, at *1 (E.D. Tenn. May 2, 2011).

4

Case 3:21-cv-00139   Document 35   Filed 08/26/21   Page 4 of 12 PageID #: 376

10 at 9–13.) For Defendants' alleged misdeeds—which Plaintiffs refer to as "the largest 'fuck up' in American history"—Plaintiffs seek at least $3.7 trillion in damages and an injunction ordering Defendants to stop surveilling them and using "their personal data to further [Defendants'] illicit research and medical experiments." (*Id.* at 18–19; Dkt. No. 22 at 3–4.)

To help convey the fantastic nature of Plaintiffs' claims, we recount some (although by no means all) of the allegations put forth by Plaintiffs. Plaintiffs allege that on March 7, 2017, Michael "recorded an incident where an ambulance was dispatched" to the motel where he worked. (Dkt. No. 20 at 1.) In recording this incident, Michael unknowingly and inadvertently recorded a conversation taking place at a sub-audible volume. (Dkt. No. 10 at 14.) This conversation disclosed that Defendant Berkshire Hathaway and the United States government had agreed to a $1 trillion contract to surveil, investigate, and observe "the individual known as 'Scatterbrain,'" *i.e.*, Michael.[4] (*Id.* at 2, 14.) Around the same time, Michael recorded other conversations that occurred at a social event taking place at the JW Marriott hotel in Nashville. (*Id.* at 14–15.) These conversations revealed "Project Scatterbrain"—a contest in which the participants were competing to see who could induce Michael or Kyle to commit suicide. (*Id.* at 15; Dkt. No. 22 at 1.) What follows are some examples of what Project Scatterbrain's contestants said or talked about, as alleged in the Final Amended Complaint:

- Defendants Warren Buffett and Charles Munger, executives at Defendant Berkshire Hathaway, discussed how they were able to secure a $1 trillion contract with the U.S. government "to monitor 'the individual known as Scatterbrain.'"

---

[4] In mid-2016, Michael copyrighted "Scatterbrain," a novel based on true events, under the pseudonym "Michael Damiana." (Dkt. No. 10 at 9, 11.) Michael briefly published the novel online using Amazon's virtual literary marketplace and sold one copy. (*Id.* at 9–10.) Plaintiffs do not explain how Defendants could have identified Michael as "Scatterbrain" (or the author of the novel of the same name) when he wrote the novel using a pseudonym.

5

- Defendant Kenneth Chenault, the chief executive officer and chairman of Defendant American Express at the time, stated that American Express could "finally get our revenge against Michael" and that he had a plan to have Michael's "ex-boyfriend nag him . . . in an attempt to coerce [Michael] into committing suicide."
- Agents from Defendant Microsoft and Defendant Berkshire Hathaway discussed how Michael was a "plight on society."
- Someone stated that "between Microsoft, Amex, Berkshire, Bank of America, [and] Renasant Bank . . . we can finally do away with Michael."
- Four probation officers (all Defendants) discussed a $100 billion "grand prize" for anyone who could coerce either Michael or Kyle to commit suicide.
- Defendants Vincent Bambinelli (Michael's uncle) and Gina Bambinelli (Michael's cousin and godmother) talked about keeping Michael's mother from learning about "the events about to unfold."

(Dkt. No. 10 at 2–3, 7, 15–16.) As set forth in his "Affidavit in Support: 'Project Scatterbrain,'" Michael also heard the following discussions or occurrences in his March 2017 recordings:

- Kyle was raped by several individuals, including a former U.S. president and former U.S. vice president, after he agreed to ingest Rohypnol and be sexually abused. Michael believes, however, that "Kyle was unaware of how many people would be involved and of how much was being charged to rape him."
- Individuals on the recording claimed that the song "It's the Hard Knock Life" from the musical *Annie*, which Michael heard as background music on the recording, is "supposed to keep the pedophiles happy and get them in the mood."

- An executive order was issued wherein Michael "was bound to be tortured for a period of about a year and a half, scheduled to end at the end of the 'Scatterbrain Challenge' on June 18th, 2021."
- One individual "suggested that they watch something that mattered, instead of the child porn, which consisted of underage memories pulled unauthorizedly from [Michael's] brain," and which, Michael imagines, "was playing on the widescreen."
- Many of the individuals bet that Michael was a domestic terrorist.
- A mock trial took place "for republicans and democrats alike, to get their anger and frustration [out] with regard to [Michael's] actions in 2008, and then again in 2014."
- Kyle and federal prosecutors played what Michael calls "Telepathic Memory Poker," which is "like some version of the newlywed game."
- Individuals stated that Michael was "the most beautiful man that multiple people ever laid their eyes on" and that he is "infinitely more intelligent than" all the guests at the meeting. These were two of "the most seemingly true things" that Michael heard in the recording.

(Dkt. No. 20 at 1, 3–6.)

Plaintiffs' filings also describe certain mind- and sense-reading technologies. "Neurological Mining" technology collects and records an individual's ideas and thought processes. (Dkt. No. 10 at 10.) The Neurological Mining technology can also collect and store an individual's dreams while the individual is asleep (specifically referred to as "Dream Surfing"); obtain and record audio, video, and other data associated with an individual's memories (specifically referred to as "Memory Poaching"); and obtain and record the sights and sounds seen and heard by an individual (specifically referred to as "Video Eavesdropping" and

"Otolarynological [sic] Eavesdropping," respectively). (*Id.* at 10–11.) Defendants have used the Memory Poaching technology to access Plaintiffs' memories and have used these memories "to bully, embarrass, blackmail, or sabotage" Plaintiffs. (*Id.* at 12.) Defendants also have collaborated to extract ideas, thoughts, images, sounds, and other neurological and biological data from Michael to develop the Telepathic Technology. (Dkt. No. 22 at 2.) Michael's cousin and her husband hold themselves out to be the creators of the Telepathic Technology, and executives such as Warren Buffett, Elon Musk, and Mark Zuckerberg were "on board with" their companies using Michael as a "lab rat" and extracting data from his mind. (*Id.* at 1–2; Dkt. No. 20 at 3.)

Since March 2017, Defendants have been using their technologies to broadcast "Events" at a sub-audible volume to Plaintiffs. (Dkt. No. 10 at 9–10.) These Events are intended to cause Plaintiffs to experience "substantial emotional distress, to change their previously intended or planned course of action in their lives, or to otherwise deceive, fool, trick, mislead, control, or manipulate the Plaintiffs for personal gain or to further the Defendants' plans[.]" (*Id.* at 11–12.) Through these broadcasted Events, Defendants have conveyed false information to Plaintiffs and harassed them by referring to Plaintiffs as homosexuals, felons, and drug users. (*Id.*)

On September 14, 2017, Plaintiffs recorded a conversation between Vincent Bambinelli, Michael's uncle, and Defendant Richard Ferrigno, Michael's cousin. (*Id.* at 7, 16.) Bambinelli referred to the $1 trillion government contract to monitor Michael and spoke about Ferrigno "being a secret service agent for a couple of years" in reference "to an impersonation in furtherance of the malicious conspiracy to which they were both willing participants." (*Id.* at 16.) Bambinelli and Ferrigno also discussed the Telepathic Technology, which, "on information

and belief," Gina Bambinelli (Vincent's daughter) modified so it could access an individual's memories. (*Id.*)

Every corporate Defendant has distributed a copy of the Telepathic Technology to employees and corporate executive staff "for the sole purpose of furthering the malicious conspiracy detailed" in the Final Amended Complaint. (*Id.* at 17.) Every corporate defendant has also distributed a copy of Michael's novel "Scatterbrain" through their corporate governance. (*Id.* at 16.) Plaintiffs believe that most, if not all, employees either purchased or received free-of-charge at least one copy of the novel. (*Id.*) Potentially more than one million individuals employed by Defendants Berkshire Hathaway, American Express, Bank of America, United Bancorp, Renasant Bank, Tesla, Facebook, Microsoft, and Waffle House received the novel "for the sole purpose of furthering the malicious conspiracy detailed" in Plaintiffs' Final Amended Complaint. (*Id.* at 2, 17.) Furthermore, at least one corporate Defendant modified the novel, changing the author's name to disguise the material, and then distributed the novel "to paint the Defendant [sic] in a false, negative, and/or misleading light." (*Id.* at 17.)

In June 2019, Michael purchased a "smart" wristband, which Tesla has used "to scan the electromagnetic signature from [Michael's] brain." (*Id.* at 13; Dkt. No. 21 at 6.) Later, in November 2019, Michael received an unbranded tablet in the mail, which Microsoft similarly has used "to scan the electromagnetic signature from [Michael's] brain." (Dkt. No. 10 at 13.)

Based on a series of conversations Plaintiffs recorded on or around February 2, 2020, Kyle and his ex-girlfriend were approached by Richard Ferrigno and his wife, Defendant Melissa Ferrigno, who were working with Vincent Bambinelli. (*Id.* at 7, 16.) Bambinelli had instructed the Ferrignos to impersonate U.S. Secret Service agents while speaking with Kyle and his ex-

9

girlfriend and to use Bambinelli's name "so that if it comes back to us it will be confusing to the government." (*Id.* at 16.)

On February 9, 2020, Defendants began forcing Michael to telepathically communicate with them. (*Id.* at 10.) In March 2020, Michael filed a report with the Nashville Police, in which he posited that Defendants had set up his residence with speakers, microphones, and/or video surveillance to harass him. (*Id.* at 12.) This, however, was before Michael became aware of Defendants' technology and its capabilities. (*Id.*) Based on what Defendants have broadcasted to him, Michael believes that Defendants, "in an attempt to sabotage his life further and frustrate his efforts in resolving the issues at hand," acquired the motel where he worked and resided, which forced him to lose his job and seek another residence. (*Id.* at 13; Dkt. No. 20 at 1.)

Between August 2020 and November 2020, Plaintiffs collected 400–500 GB of files relating to Project Scatterbrain. (Dkt. No. 10 at 14; Dkt. No. 21 at 6–7.) Michael sent these files, the audio recording from 2017, and a summary of Project Scatterbrain's events to the FBI in February 2021. (Dkt. No. 21 at 6–7.)

As of April 2021, the telepathic channel through which Defendants were forcing Michael to communicate was still open. (Dkt. No. 10 at 10.) At some point, Michael told someone via this channel that "I'll break your game." (Dkt. No. 20 at 6.) Michael also asserts that he has been true to his word: "Promise kept: I broke your fucking game[.]" (Dkt. No. 22 at 5.) In fact, Plaintiffs claim that Michael "is the clear and undisputed winner of 'Project Scatterbrain' . . . and therefore is, officially, 'American Royalty' above and beyond anyone who has ever claimed such a label previously, as it has been rightfully earned, but was not solicited." (*Id.*)

Dismissing a complaint under Rule 12(b)(1) "is appropriate in only the rarest circumstances," but Plaintiffs' filings—and the just-recited allegations in particular—convince

10

Case 3:21-cv-00139   Document 35   Filed 08/26/21   Page 10 of 12 PageID #: 382

us that this case exemplifies one of those rare circumstances where the complaint is "totally implausible." *Apple*, 183 F.3d at 480. Indeed, courts on several occasions have found subject matter jurisdiction lacking over similarly fantastic and irrational complaints. *See, e.g.*, *Clark v. United States*, 74 F. App'x 561, 562–63 (6th Cir. 2003) (plaintiff "asserted that, because of his royal lineage, the United States had entered into agreements with other organizations to use 'signals intelligence' and 'directed energies,' i.e., sound, gravity, and laser, to target him for radiation experiments on U.S. citizens with royal genes and 'social historical spiritual archetypes'"); *Dunigan v. FBI*, 3 F. App'x 461, 461–62 (6th Cir. 2001) (plaintiff alleged "that federal officials controlled the minds of plaintiff and her family through electronic devices"); *Lynch v. Tennessee*, No. 3:16-cv-03034, 2017 WL 6462345, at *1 & n.1, *4 (M.D. Tenn. Sept. 25, 2017) (plaintiff alleged that the defendants, who included his family members, neighbors, and a bank, controlled his mind and tortured him using "verbal messages and visual images that only he can hear or see, mind manipulation, physical manipulation of his body to cause high-speed accidents while driving, burning pain caused by a 'beam of heat' directed to his body parts, and constant bombardment by radiation and sound"); *Tucker v. FBI Head Quarters*, No. 19-13626, 2020 WL 2059866, at *2–3 (E.D. Mich. Apr. 29, 2020) (plaintiff alleged, among other things, that surveillance operatives had been hypnotizing and brainwashing him and his wife through "electronic warfare" and "neural weapons"); *Findler v. Wray*, No. 19-cv-11498, 2019 WL 8012085, at *1–4 (E.D. Mich. Nov. 13, 2019) (plaintiff alleged that more than 100 FBI special agents and the FBI's director created a Facebook Group to stalk and harass him for no apparent reason and "tracked his movements, accessed and stole information and media from his electronic devices, and published his personal information on the Facebook Group's webpage"); *Miles v. United States*, No. 2:15-CV-1082, 2015 WL 8539042, at *1–2 (S.D. Ohio Dec. 11,

2015) (plaintiff alleged "a vast government conspiracy involving alien mind-control technologies, unmanned aerial vehicles circling her residence and bombarding it with radiation, and 'nano-sensors' deployed underneath her skin for 'non-consensual human experimentation and torture'" (internal citations omitted)); *Selvy v. Dep't of Hous. & Urb. Dev.*, 371 F. Supp. 2d 905, 907–09, 911 (E.D. Mich. 2005) (plaintiff alleged that "a vast international criminal consortium run by what he terms 'the Freemasonry movement' has wreaked various injustices on the people of Detroit, the United States, and the whole world and has persecuted [the plaintiff] since he was a child"); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 761–64 (E.D. Mich. 2001) (plaintiff alleged that he was "the 'Messiah-God' . . . and [] therefore entitled to release from confinement, or in the alternative, to vast amounts of worldly treasure").

Because Plaintiffs' case is grounded in fantastic and delusional scenarios, we do not have subject matter jurisdiction over it. We therefore *sua sponte* dismiss Plaintiffs' Final Amended Complaint under Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, we *sua sponte* dismiss Plaintiffs' Final Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Given our Rule 12(b)(1) dismissal of this case, we deny as moot Plaintiffs' pending motion for default (Dkt. No. 23) and the Berkshire Hathaway Parties' pending motion to dismiss (Dkt. No. 24). This case is terminated. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: August 26, 2021